**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **CLIFFORD STEVENS, et al.** | **CIVIL ACTION NO. C-1-00-901** |
| **Plaintiffs,** | |
| | **(Spiegel, J.)** |
| v | |
| **DAVIDSON LADDERS, INC, et al.,** | **MOTION IN LIMINE TO EXCLUDE THE OPINION** |
| **Defendants** | **TESTIMONY OF MIKE VAN BREE** |

Plaintiffs' by counsel, move the court pursuant to Fed. R. Civ. P.37(c) for an order excluding or limiting the opinion testimony of Defendants' late and inadequately qualified witnesses, Mike Van Bree. The "Expert Report" provided does not comply with the provisions of Fed. R. Civ. P. 26(a)(2), it does not specifically identify nor attach the data or exhibits information required by Fed. R. Civ. P. 26(a)(2)

I. INTRODUCTION

Plaintiffs, Clifford Stevens and Cynthia Stevens hereby move the Court for an order excluding any expert testimony or opinion testimony by Defendant's witness, Mike Van Bree, from the trial in this matter.  Plaintiff has reason to believe that Defendants, will seek to elicit expert testimony and opinion testimony from Van Bree during direct examination at trial.

As explained more fully below, Van Bree has recently been formally identified as an expert and has only recently submitted an expert report pursuant to Civ. R. 26 and the Court's order.

II. FACTS

Van Bree finally inspected the subject ladder on April 15th 2002 after several reschedulings affected at his request. At this stage the ladder in question had been examined by Dr. Jayaraman as also Counsel for the Defendants. When presented to Counsel for the Defendants for examination the ladder was in pristine condition (see a copy of the supplemental opinion of Plaintiffs' Expert Dr. Jayaraman attached hereto marked "1")

He has reached a conclusion that the ladder manufactured in May 1993 would have little likelihood of being in stock in October 1998 (Van Bree Opinion dated October 28th 2003 "Analysis of Claim paragraph 3). There is no factual foundation for such opinion, such as delivery dates, manner of transport, warehousing within Mexico and then within the United States of America and whatever route it may have followed through the defendants hands finally to Builders Square. No factual basis, figures or financials have been disclosed to support any of Van Bree's theories.

Van Bree has referenced wear patterns to the ladder without identifying any studies done of the use of the ladder after its first use by the Plaintiff and before his examination of the ladder in question some four years after he finally examined it. Additionally there are no scientific examinations performed by Van

Bree of the fractured piece or remaining portion of the damaged rung lock on the ladder in question. A "visual" inspection appears to be the basis for his conclusions, not having referred to any specific testing of this ladder but presumably other ladders. If the latter presumption is correct he may be basing his opinion on tests performed by some other entity or person, the content of which is hearsay. In any event the tests and test data have not been submitted as an exhibit or identified by date time nature and extent of and location where the alleged tests were performed nor indeed by whom they were performed. There is no suggestion that he either personally performed the tests in question or indeed was present when the tests were performed. The result is that part of what he bases his opinion on is hearsay. Plaintiffs have not been afforded access to the data in question. No additional appropriate witness has been identified to testify to the tests performed, the circumstances surrounding the tests and the testing criteria and results along with the criteria or standards required to be met so as to properly admit the tests and results nor has any suggested basis for admissibility been claimed. The Plaintiffs have clearly been prejudiced in this regard by not being afforded the opportunity to examine the relevant data and, if required present same to an expert for consideration.

  The conclusions reached in paragraph one and two are unsupported by the body of the opinion. The relevance of compliance with the agencies and documents referenced in paragraph 2 has no bearing on the conduct of the defendants in putting the ladder into the stream of commerce in Ohio,

maintaining it there with regard to, inter alia, knowledge by the Defendants of injuries caused by and experienced with "false locking" of the ladder and rung lock in question.

The specific ANSI standards and other testing requirements with which the Cuprum Model 405-28 apparently generally complies is in any event not a defense to any claim. This is so especially if there are known problems with rung locks "false locking" or rung locks that complied with those standards causing injury or being recalled because of injuries caused.

The suggestion is that because it met the "standards" (the specificity of which is yet to be forthcoming) there is no liability. These standards are prejudicial and misleading to the average man. The industry is well aware that even if "standards" are complied with defects in design, manufacture, etc., regularly occur.

III. LAW AND ARGUMENT

Van Bree should not be allowed to give expert testimony. Regardless of whether the Defendants formerly proffer him as an "expert," he should not be permitted to testify about subject matters that require expert testimony or to give opinions. The opinions are based on inadmissible hearsay and speculation.

Plaintiffs request the Court to impose this limitation because of the lack of factual foundation, the lack of scientific examination widely accepted by the industry at large as reliable, the reliance on hearsay for conclusions, the speculation contained in his entire report and more specifically his third and

fourth conclusions, and lack of a scientific basis for his first and fifth conclusion (though the latter may very well be based on other accident cases).

Civ. R. 26 states:

(2) Disclosure of Expert Testimony.

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. ***The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions;*** the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

(C) These disclosures shall be made at the times and in the sequence directed by the court. ***In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial*** or, if the evidence is intended solely to contradict or rebut evidence on the same

subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party. The parties shall supplement these disclosures when required under subdivision (e)(1).

Civ. R. 26(a)(2)(A)-(C) (emphasis added).

Under the circumstances, Plaintiff would be highly prejudiced if the Court allowed Van Bree to give testimony about areas requiring expert testimony or to give opinion evidence. This includes subjects such as ladder standards and protocols, whether Cuprum complied with those standards, ladder safety and design, Van Bree's own examination and inspection of the ladder, testimony about the exemplar ladder, etc. and more specifically about the ladder in question.

Doing so here will discourage Defendants and parties in other cases from trying to circumvent Civ. R. 26 or pretrial orders by having fact witnesses "double" as experts. *See, e.g., Vaught*, 98 Ohio St. 3d at 487-88; *see also Scott & Fetzer Co. v. Dile*, 643 F.2d 670 (9th Cir. 1981); *Smith v. Ford Motor Co.*, 626 F.2d 784, 794 (10th Cir. 1980); *Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978).

IV.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court issue an order (i) expressly prohibiting Mike Van Bree from testifying about subject matters that call for expert testimony and (ii) prohibiting Van Bree from giving opinion testimony in this trial.

Respectfully submitted,

        s/Raymond Becker

        _____

**RAYMOND BECKER (0041641)**

Trial Attorney for Plaintiffs

324 Reading Road

Cincinnati, Ohio 45202-1366

(513) 241-6748

Fax # 241-1615

## CERTIFICATE OF SERVICE

I hereby certify that on December 4th 2003, this *Motion in Limine* was filed electronically. Parties may access this filing through the Court's system.

        s/ Raymond Becker
        Raymond Becker (0041641)

PLAINTIFFS EXHIBIT "1"

N. Jayaraman, Ph.D. (Metallurgical Engineering)
12161, Woodland Hollow
Cincinnati, OH 45249-8126
Telephone: (513)530-5052
Cell: (513)295-0643

Date: November 20, 2003

Mr. Raymond Becker

Attorney at Law
324, Reading Road
Cincinnati, OH 45202

Re: Clifford Stevens Claim; Davidson Cuprum Aluminum Extension Ladder

Dear Mr. Becker,

I have been asked to supplement my report in this matter so that it complies with the provisions of Rule 26 of the Federal Rules of Civil Procedure. I supplement my report dated November 20, 2000 as follows:

Upon my initial examination of the ladder, abrasion markings were seen on the ladder where the rung lock mechanism had been broken. In contrast, the side where the run lock mechanism was intact displayed several minor catch marks and a deep gouge. This is consistent with the premature catastrophic failure of the locking mechanism that did break. There were very limited markings on the ladder rungs at the time of my initial examination, and the generally, the ladder appeared to be in pristine condition.

The end (hook) piece of the rung lock mechanism (which was never found) that catastrophically failed broke first and hence did not engage completely. It also appears most probable based on reasonable engineering certainty that both rung lock mechanisms were not fully engaged. If the rung lock mechanisms were not completely engaged then the level of stresses experienced by the weakest point in the mechanism will be amplified. This will be particularly the case if the entire weight of the human body shifted to onto the side of the ladder where the lowest foot bore the weight. When the rung lock mechanism is fully engaged, such as is depicted in photograph number 14 attached to Mr. Sunderlin's report, the stresses in the weakest region of the mechanism will be substantially less than when the rung lock mechanism is not fully engaged. This is due to the leveraging effect caused by partial engagement. When the rung lock mechanism is not fully engaged, the stresses may possibly exceed the strength of the material, and lead to failure. Absent the material defect in the rung lock mechanism, the probability of the rung lock mechanism on the ladder in question failing is very small. Any material defect as was discovered and is referred to in my report of November 20th 2000 will exacerbate this potential problem. In conclusion, based on my examination of the material defect in the remainder of the broken rung lock it is more probable than not, based on reasonable metallurgical and engineering certainty, that the cause of the catastrophic failure stemmed directly from the material defect.

In addition to the above, there is nothing contained in any of the warnings on the labels on the ladder to suggest how the locking mechanism is to be secured or how a user is to determine whether or not the locking mechanism is fully engaged preparatory to use. Even knowing how the rung lock should look in a fully engaged status, there is difficulty discerning this when the ladder is engaged at various levels above the users head. The natural assumption in the ordinary use of the ladder in the circumstances is to rely on an auditory click followed by an assumption that the locking mechanism is fully engaged.

The opinions expressed by me are based on reasonable certainly and on my education, experience, research and teachings in the field of Metallurgical Engineering.

My current biographical sketch is attached marked "A".

Thank you.

Sincerely,


N. Jayaraman.

**N. JAYARAMAN**
Director of Materials Research

EDUCATION:
Ph.D. (1979), M.E. (1972), B.E. (1970) Metallurgical Engineering, Indian Institute of Science, Bangalore, B.Sc. (1967) Physics, University of Madras, India.

Dr. Jayaraman joined Lambda Research as Director of Materials Research in the summer of 2002.
After receiving his doctorate from the Indian Institute of Science, Dr. Jayaraman joined the Department of Materials Science and Engineering, University of Cincinnati and rose to the rank of Professor of Metallurgical Engineering in 1990 and recently served as the Head of the Department of Materials Science and Engineering until

summer of 2002. Dr. Jayaraman's research and educational interests are in the areas of mechanical behavior of materials, micromechanics, fatigue damage evolution and life prediction, residual stress effects, and finite element analysis. He has advised nearly 50 graduate students (MS and PhD) in their theses and dissertation research, and over 50 undergraduate students in their senior projects. He has published and presented over 100 papers as a co-author with his students. He has taught several courses at all levels of undergraduate and graduate education, including Mechanical Behavior of Materials, Fracture Mechanics, Failure Analysis, Finite Element Modeling, Metal Forming Processes, Physical Metallurgy, Dislocations, X-ray Diffraction and Transmission Electron Microscopy. Dr. Jayaraman has received numerous awards for his professional contributions, including several teaching awards and the NASA-Summer Faculty Fellow for two years; he also served as a Visiting Scientist with AFRL and as a Technical Consultant for AFRL and several companies in the private sector.

Dr. Jayaraman has published or presented over 100 publications including:

P. Rangaswamy, M.A.M. Bourke, P.K. Wright, E. Kartzmark, J. Roberts & N. Jayaraman, "Influence of Residual Stresses on the Thermo-mechanical Processing of SCS-6/Ti-6-2-4-2 Titanium Metal Matrix Composites," Materials Science & Engineering Mar.31,1997, pp 200-209.
Partha Rangaswamy and N. Jayaraman, "Issues related to prediction of residual stresses in Ti-alloy matrix composites", ASTM Symposium on "Life Prediction Methodology for Titanium Matrix Composites", Ed., W.S. Johnson, ASTM-STP 1253, 1996, pp66-82.
Partha Rangaswamy, W.C. Revelos and N. Jayaraman, "Residual Stresses in SCS6/Ti-24Al-11Nb Composite: Part I--Experimental", - ASTM Journal of Composites Technology and Research, Vol.16(No.1), January 1994, pp 47-53.
S.J. Covey, B.A. Lerch and N. Jayaraman, "Fiber Volume Faction Effects on Fatigue Crack Growth in SCS-6/Ti-15-3 Composite" - paper presented at the "Mechanisms and Mechanics of MMC Fatigue I" TMS-1994 Materials Week, October 2-6, 1994, Rosemont, IL.
Partha Rangaswamy and N. Jayaraman, "Issues Related to Prediction of Residual Stresses in Ti-alloy Matrix Composites", invited paper presented at the ASTM Symposium on "Life Prediction Methodology for Titanium Matrix Composites" - March 22-24 1994, Hilton Head, SC. - invited
S.J. Covey*, B.A. Lerch and N. Jayaraman, "Fiber Volume Effects on Fatigue Crack Growth in Notched SiC/Ti-15-3 Composite", Presented at NASA's Hi-Temp Conference, Cleveland, OH. October 26-27, 1993. - invited