UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION-CINCINNATI

| | |
|---|---|
| CLIFFORD STEVENS and CYNTHIA L. STEVENS<br><br>PLAINTIFFS<br><br>v.<br><br>DAVIDSON LADDERS, INC., et al.<br><br>DEFENDANTS | CIVIL ACTION NO. C-1-00-901<br>(Spiegel, J.)<br><br>**DEFENDANT'S MOTION TO EXCLUDE OPINION TESTIMONY OF L.D. RYAN AND MOTION FOR SUMMARY JUDGMENT** |

Defendant, Louisville Ladder Group, LLC, by counsel, moves the court to exclude opinion testimony from plaintiffs' engineering consultant, L. D. Ryan, and moves the court to dismiss plaintiffs' claims. Dr. Ryan's liability theory rests on a single factual assumption which *directly contradicts* plaintiff Clifford Stevens's sworn testimony regarding the accident in question. Dr. Ryan's proposed testimony is unreliable, will only confuse the jury, and should be excluded. Absent Dr. Ryan's proposed testimony, plaintiffs have no testimony or other evidence that defendant's product was defective or caused plaintiffs' injuries. Therefore, plaintiffs' claims fail as a matter of law and should be dismissed.

### Background

On October 17, 1998, Clifford Stevens fell from an aluminum extension ladder while cleaning the gutters at his home. In his complaint, Mr. Stevens alleges generally that the ladder was defective and unreasonably dangerous.[1]

On November 30, 2001, defendants deposed Mr. Stevens, and he testified at length about the manner in which the accident happened. On the day in question, Mr. Stevens set the ladder up on the deck behind his house with the assistance of his two sons. While standing on the

---

[1] Plaintiffs' first liability witness, Dr. Jayaraman, put forth a metallurgical theory of product defect. Dr. Ryan is plaintiffs' second liability witness, and his theory supercedes Dr. Jayaraman's theory.

ladder, Mr. Stevens used a garden hose to flush leaves out of the gutters at one location in the rear of his home, and he then climbed onto his roof so that his sons could move the ladder to a different location. *See* Deposition of Clifford Stevens at 125:18-20; 126:22-127:2. (All excerpts from Mr. Stevens's deposition are attached collectively as Ex. A.) While Mr. Stevens was on the roof, he watched while his sons moved the ladder to a new position. Mr. Stevens testified that his sons *did not* adjust the length of the ladder in positioning it at the second location:

> Q. Do you know whether the boys extended the ladder to reach the taller roof of the bedroom?
>
> A. I know they didn't, I watched them.
>
> ...
>
> Q. ... Tell me what you saw about the boys moving the ladder from the great room gutter to the bedroom gutter?
>
> A. Saw them stand up the ladder, saw them pick up the ladder and move it to that roof line.
>
> Q. Then you saw them lean it against the gutter?
>
> A. Yes.
>
> Q. Did you see them extend it?
>
> A. No.
>
> Q. And do you say they didn't extend it because you didn't see it or because you know they didn't extend it?
>
> A. I know they didn't.
>
> Q. How do you know that?
>
> A. I was watching them.

Stevens depo. at 138:1-19; *see also id.* at 135:13-18. After the ladder was repositioned, Mr. Stevens stepped back onto the ladder, descended two or three rungs, and then the ladder collapsed, "telescoping down into itself." *Id.* at 142:21-143:4. Mr. Stevens's testimony is the

only sworn description of the events surrounding the accident, and it is the admission of a party-opponent. Fed. R. Evid. 801(d)(2).

Contrary to Clifford Stevens's sworn testimony, plaintiffs' safety engineering consultant, L.D. Ryan—who was not present at the scene of the accident—intends to testify that Stevens's sons *did extend* the ladder when they moved it to the second location. In the "Accident Reconstruction" section of his report, Dr. Ryan acknowledges Mr. Stevens's testimony, stating that "Stevens' thinks that … [his sons] … did not adjust the height of the ladder." *Id*. at 3. However, Dr. Ryan concludes that "[w]hen Stevens' sons moved the ladder and adjusted the angle, they must have extended the ladder. … Recent communications with Stevens' sons confirms this fact." *Id*. at 5. Dr. Ryan recognizes that his accident reconstruction is not consistent with plaintiff's testimony: "The accident reconstruction follows the plaintiff's sworn testimony *except for the fact that the extension ladder was extended* when moved from the great room roof-line to the higher roof-line." *Id*. at 43 (emphasis supplied). Dr. Ryan's accident reconstruction forms the basis for his ultimate conclusion that the ladder became improperly secured when the ladder was extended after the plaintiff climbed onto the roof and that, because it was possible for the ladder to be unlocked, the ladder was defective. *See id*. at 3, 43-46.

## Discussion

**1.    Exclusion of Dr. Ryan's proposed testimony.**

Expert testimony is not admissible unless it is reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Dr. Ryan's testimony is not reliable because it directly contradicts Clifford Stevens's sworn testimony, and it is not relevant because it will confuse, rather than assist, the jury.

Proposed testimony is not reliable if it is based on subjective belief or speculation. *Ammons v. Aramark Uniform Servs., Inc.*, 386 F.3d 809, 816 (7th Cir. 2004). Expert testimony is

merely speculative when it contradicts the uncontroverted factual evidence in the case. *Newman v. Hy-way Heat Systems, Inc.*, 789 F.2d 269, 270 (4th Cir. 1986). In *Newman*, plaintiffs alleged that they were injured while attempting to clean an asphalt strainer. Plaintiffs' expert testified that "the only way the accident could have happened was for someone to enter the control room 60 feet away from the strainer and turn the motor on in reverse." He theorized that the "motor had been energized in reverse either 'inadvertently,' 'as a prank,' or 'as a malicious act.'" However, other evidence that plaintiffs presented showed that the only person who had been in the control room turned off the motor switch and left minutes before the accident. *Id.* The expert's testimony directly contradicted the facts plaintiffs presented and, therefore, the trial court held that the expert's testimony was nothing more than mere speculation. The trial court struck the expert's testimony and the court of appeals affirmed. *Id.*

The United States Supreme Court has also recognized that expert testimony is unreasonable when it directly contradicts the testimony of the party presenting the expert. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). The *Brooke Group* case involved complex Robinson-Patman Act claims which, among other things, required proof of supracompetitive pricing in the generic cigarette market. Plaintiff's expert asserted a complicated theory regarding predatory price discrimination, but plaintiff's own officers and directors consistently denied a key factual assumption of plaintiff's expert's theory. *Id.* at 237, 242; *see also Liggett Group, Inc. v. Brown & Williamson Tobbacco Corp.*, 748 F. Supp. 344, 356 (M.D.N.C. 1990) (further explaining the contradiction). The contradictory testimony of plaintiff's expert was deemed insufficient to support the jury's verdict for plaintiff. *Brooke Group Ltd.*, 509 U.S. at 242-43.

The necessity for a factual basis for expert testimony is long-standing law. "While the courts will give wide latitude to the reception of expert opinion evidence, we think it axiomatic that it must be based upon conceded or proved facts, and that a naked opinion, based obviously on mere speculation and conjecture, does not rise to the dignity of evidence, especially when it is in conflict with the conceded physical facts ... ." *Atlantic Life Ins. Co. v. Vaughan*, 71 F.2d 394, 395-96 (6th Cir. 1934).

Clifford Stevens unequivocally conceded that his sons *did not* extend the ladder in moving it to its second position. Stevens' depo. at 138:1-19; *see also id*. at 135:13-18. Yet now, plaintiffs' proposed expert wants to directly contradict Mr. Stevens' sworn testimony to suit the purposes of his opinions. Dr. Ryan's ultimate opinions are essentially that: (1) the ladder's "fly-locks" – the mechanisms that secure the "fly" or movable portion of the ladder to the base during extension – became "tip-locked" or "false locked," meaning improperly engaged, (2) the improper lock engagement allowed the ladder to telescope downward, and (3) the ladder was defective because it was not designed to prevent improper lock engagement. Ryan Rpt. at 43-46. Dr. Ryan believes that "the ladder was properly locked when the plaintiff climbed the ladder to get onto the roof." *Id*. at 44. Thus, Dr. Ryan's ultimate opinions are only possible if the ladder's locks became *unlocked* in the brief time after Mr. Stevens climbed onto the roof and before he stepped back onto the ladder. In an attempt to side-step Mr. Stevens' clear testimony that the ladder was not extended during this period, Dr. Ryan makes length and angle calculations related to the ladder and points to "communications" with the Stevens's sons. However, plaintiffs cannot avoid their factual admission by Mr. Stevens's testimony, notwithstanding Dr. Ryan's speculation. Speculation is not appropriate opinion testimony.

In addition, expert testimony is not appropriate unless it will "assist the trier of fact." Fed. R. Evid. 702. Dr. Ryan's testimony would only confuse the jury by directly contradicting Mr. Stevens's testimony. Mr. Stevens' eye-witness account of his sons' relocation of the ladder is the *only* evidence in the record. By directly contradicting that account, Dr. Ryan's proposed testimony is unreliable and confusing. Therefore, defendants ask that the court exclude Dr. Ryan's proposed testimony.

## 2. Summary judgment.

Under Ohio law, recovery on a products liability claim requires proof that: (1) defendant manufactured and sold a defective product, (2) the defect existed at the time the product left defendant's control, and (3) the defect directly and proximately caused plaintiff's injuries. *Indiana Ins. Co. v. General Electric Co.*, 326 F. Supp. 2d 844, 855 (6th Cir. 2004). Expert testimony is required on the issue of causation. *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 513 (6th Cir. 2003). Without Dr. Ryan's proposed testimony, plaintiffs have no testimony or other evidence that the ladder was defective or that any alleged defect caused Mr. Stevens's fall. Therefore, there is no genuine issue of material fact, and plaintiffs' claims should be dismissed.

        s/ Jamie K. Neal
        John L. Tate
        Jamie K. Neal
        STITES & HARBISON
        400 West Market Street, Suite 1800
        Louisville, Kentucky 40202-3352
        Telephone: 502/587-3400

        Joseph P. Thomas
        Jennifer Jansen Bouchard
        ULMER & BERNE, LLP
        600 Vine Street, Suite 2800
        Cincinnati, Ohio 45202-2409
        Telephone: 513/762-6200

        COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Bruce B. McIntosh
Michael Todd McIntosh
MCINTOSH & MCINTOSH PLLC
15 East Eighth Street, Suite 300W
Cincinnati, Ohio 45202

        s/ Jamie K. Neal
        Counsel for Defendants