

Hechingers Risk Management Department

January 14, 1999

Davidson Manufacturing Company
P.O. Box 818
700 Swan Drive
Smyrna, TN 37167

RE:   Our File:    2157-3680
      Claimant:    Cliff Stevens
      A/L Date:    10-17-98
      Client:      Hechinger/Builders Square/Home Quarters

Dear Sir/Madam:

Please allow this to serve as an official tender of the above captioned claim for handling. This claim involves a Model #387-28, Davidson Ladder Cuprum, 28 foot extension ladder, purchased at a Builders Store location in Columbus, Ohio.

Due to the Certificate of Insurance and the Indemnity Agreement, we are turning this claim over to you for handling. Please confirm receipt of this claim and that you are assuming the defense and indemnification of same.

You may reach the claimant at the following address and/or phone number:

> Cliff Stevens
> c/o Walter Haggerty, Esq.
> 2500 PNC Center
> 201 East 5th Street
> Cincinnati, OH 45202
> (513) 651-6800

Again, by copy of this letter we are advising the claimant of our actions. We are also providing the claimant with your phone number of 800-999-7297, should they have any questions regarding this matter. This will conclude our handling of this matter.

Very truly yours,

Lance Eric Ekas, Casualty Adjuster

cc: Walter Haggerty, Esq.

**& ASSOCIATES**
Consultants

728 STRAUB ROAD
CHESTERFIELD, MISSOURI 63017-7948

Telephone (314) 227-1115
Facsimile (314) 527-4932
Toll Free (800) 550-1115

January 20, 1999

Walter Haggerty, Esq.
2500 PNC Center
201 East 5Th Street
Cincinnati, OH 45202

RE: Cliff Stevens

Dear Mr. Haggerty:

Pursuant to our telephone conversation of today concerning your clients incident with a model #387-28, aluminum extension ladder, our office handles all the claims for Davidson Manufacturing, Inc., the manufacturer of the ladder, and we have complete authority to discuss any negotiations on their behalf.

In order for us to evaluate this case we would need to have positive identification of the ladder in question. Please send to us pictures of the ladder including:
1. Labels showing manufacturer's name
2. The label on the side rail showing some numbers indicating the date of manufacture
2. Any broken or bent parts
3. The position of the ladder before and after the accident if possible.

We would also need copies of all medical records he may have incurred. Once that information is in our office we will contact you to discuss this case. You can be assured this will receive our utmost attention.

If you have any questions please do not hesitate to contact us. We await your reply.

Very truly yours,


William H. James
Associate

cc   Lance Eric Ekas
     Crawford Hechingers Risk
     1801 McCormick Drive
     Largo, MD 20774

James M. Sunderlin
11 Liberty Street, P.O. Box 251
Fredonia, PA 16124-0251

May 15, 1999

Edward E. Cooke
Edward E. Cooke & Associates
728 Straub Road
Chesterfield, MO 63017-7948

RE: Clifford Stevens Claim

Dear Mr. Cooke:

Enclosed is my photographic report and legend in the captioned matter. Mr. Stevens is a very sophisticated, successful claimant. He claims to be an engineer. The damage to the left-hand lock assembly probably occurred when the lock assembly was driven past the rung sharply to encounter the guide bracket, causing the damage shown in photos # 16 and #17. Photo # 16 clearly shows the witness mark where the lock was driven into the bracket. If properly assembled, this can only happen after the lock tip have been broken, allowing it to move past the fly rung. There are no witness marks that I could find to evidence the lock tip breaking on the ladder rung. Interestingly enough, there are no signs on the right hand lock assembly to correspond with the damage to the 7th base rung. This might suggest that the locks were changed after the damage to the 7th base rung. There were no witness marks on the fasteners of either lock to suggest either been removed. Mr. Stevens claims that his wife must have misplaced the small lock fragment shown in the other photos that he took. The remainder of the lock is reportedly lost, having never been found. Mr. Stevens favors the theory that it was fragmented into multiple pieces and propelled into the nearby wood lot. While I did not tell him this, the cast lock simply does not have the ability to store the necessary energy to propel it more than ten feet from the accident site. I did look in the obscure areas surrounding the deck but was unable to locate the lock fragment.

Mr. Stevens tells us, he positioned the ladder on the right hand rain gutter and climbed onto the roof. His son moved the ladder to the other roofline (the one with the tears in the window screen) where he mounted the ladder to climb down. He had been working in this area for some five to fifteen minutes when the fly suddenly telescoped into the base. The ladder spontaneously re-locked (he relates) causing the damage to the screen. He relates that the ladder stayed in position at the screen and he fell to the deck, causing his injuries.

If we are to accept what Mr. Stevens tells us for background, it seems more plausible to assume that he moved the ladder himself, from the top, disengaging the ladder locks. When he climbed back onto the ladder, the ladder simply telescoped, causing his fall.

Neither scenario will explain the damage to the 7th base rung with no corresponding witness marks on the lock, or the missing lock and the witness marks on the lock bracket and corresponding witness marks on the lock fragment. It feels to me that there is more to this than we made aware. The clear evidentiary links are the missing lock fragment(s) and the missing witness marks on the intact right hand lock assembly. I believe that we should look to some high magnification microscopy to confirm or deny any correspondence with the rung damage. It does appear that he has constructed an accident scenario that will be difficult to defend, however implausible. He seems to have worked out all the 'right' answers.

Included are my photographs, legend and field notes.

Sincerely yours,


James M. Sunderlin
Consulting Engineer